REVISED OCTOBER 10, 2001

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 00-50751**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**


**VERSUS**


**JESUS VALADEZ,**

**Defendant-Appellant.**


_____

Appeal from the United States District Court
For the Western District of Texas
_____

September 21, 2001


Before GARWOOD, JOLLY, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Defendant-Appellant, Jesus Valadez, appeals the denial of his motion to suppress firearms seized during a traffic stop. Valadez claims his Fourth Amendment rights were violated when he was detained pending the completion of a computer check after the stopping officer became aware that Valadez had not committed a traffic violation. We reverse the district court's ruling denying

the motion to suppress.

## I.  BACKGROUND

On March 6, 1999, at approximately 6:50 p.m., Texas Department of Public Safety Trooper Richard Slubar observed a 1984 Oldsmobile traveling east on Highway 90 near Brackettville, Texas, that appeared to have an expired vehicle registration sticker on the front windshield and illegal window tinting on other windows. Slubar, who was driving in the opposite direction, decided to stop the Oldsmobile for these two suspected traffic violations.

After making contact with Valadez, Slubar explained why he had made the stop.  Slubar acknowledged that the registration sticker was valid, but told Valadez that the window tinting on other windows appeared to be illegal.  Before retrieving a window-tint meter from his patrol car, Slubar asked Valadez for his driver's license and insurance card, both of which appeared to be valid.  He returned the insurance card but retained the driver's license.

When Slubar returned to his patrol car to get the window-tint meter, he requested a check on Valadez's driver's license to determine if Valadez had any outstanding warrants.  Slubar also requested a criminal history check on Valadez.  While the computer checks were in progress, Slubar returned to Valadez's vehicle and inspected the window tint and determined that it was legal.  Slubar

2

then asked Valadez if he had any weapons or drugs in the vehicle. Valadez responded that he had a loaded pistol on the front seat of the car and a rifle in the trunk. Slubar removed the weapons from the car to run a check on them to determine if they were stolen. Shortly thereafter, Slubar returned to his patrol car to retrieve the results of the computer checks, which revealed that Valadez had a criminal history.

The results of the computer checks apparently did not indicate whether Valadez's prior convictions were for misdemeanors or felonies because Slubar then asked Valadez if he had ever been convicted of a felony. Valadez responded that he believed he had been convicted for a felony, but that he was not certain. Slubar advised Valadez that it was illegal for a felon to possess a weapon. Valadez was asked to follow Slubar to the Kinney County jail in Brackettville, which he did without incident. At the jail, the conviction was confirmed to be a felony and Valadez was arrested for the possession of a firearm by a convicted felon.

Valadez, represented by a federal public defender, moved to suppress the firearms and his statements arguing that they were fruit of an unlawful detention. The district court found that the computer check was likely run solely to detain Valadez for unrelated questioning. In support of its conclusion, the court noted that Slubar testified that he does not routinely perform criminal history checks except when there is a need to determine the type of suspect with which he is dealing. However, the court

3

noted that Slubar testified that Valadez was fully compliant, he did not fear for his own personal safety, and that he trusted Valadez to follow him to the jail unsupervised prior to an arrest being made. The court also noted that Slubar, alternatively, testified that he ran the check to determine that Valadez was being truthful. In response, the court opined "that the 'truth' regarding defendant's registration and tint were apparent from the color of the registration sticker and the reading of the tint meter."

The district court concluded that Slubar's questioning of Valadez on matters unrelated to the stop pending the results of the computer check, took "the treatment of [the] defendant out of the realm of permissible detention under *Terry*." The court, nevertheless, denied the motion to suppress. The court reasoned that ***United States v. Shabazz*,** 993 F.2d 431 (5th Cir. 1993), "guaranteed" officers a five to 15 minute window during which they may detain defendants during routine traffic stops and subject them to "wholly unrelated, and potentially quite invasive, questioning."

As a result, Valadez entered a conditional guilty plea and reserved his right to contest the suppression ruling. Valadez was adjudged guilty in accordance with 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Although the sentencing guideline range was 10 to 16 months of imprisonment, the district court departed from the guidelines under U.S.S.G. § 5K2.16, and sentenced Valadez to three

years of probation based on his voluntary disclosure of the weapons and imposed a fine of $3,000. Valadez now appeals the district court's ruling.

## II. STANDARD OF REVIEW

Valadez argues that the district court improperly denied his motion to suppress. When reviewing a ruling on a motion to suppress, the court reviews questions of law *de novo* and findings of fact for clear error. *United States v. Jones,* 234 F.3d 234, 239 (5th Cir. 2000). We view the evidence in the light most favorable to the party that prevailed in the district court. *Id.*

## III. TRAFFIC STOPS UNDER THE FOURTH AMENDMENT

The Fourth Amendment protects individuals from unreasonable search and seizure. Traffic stops are considered seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Jones,* 234 F.3d at 239. Nevertheless, traffic stops are considered more similar to investigative detentions than formal arrests. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984).

Therefore, we analyze the legality of traffic stops for Fourth Amendment purposes under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). This standard is a two-tiered reasonable suspicion inquiry: 1) whether the officer's action was justified at its inception, and 2) whether the search or seizure was

5

reasonably related in scope to the circumstances that justified the stop in the first place. *Terry*, 392 U.S. at 19-20; *Jones*, 234 F.3d at 240; *United States v. Dortch,* 199 F.3d 193, 198 (5th Cir. 1999); *United States v. Shabazz*, 993 F.2d 431, 435 (5th Cir. 1993); *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993). In addition, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983).

However, once an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion. "At that point, continuation of the detention is no longer supported by the facts that justified its initiation." *Shabazz*, 933 F.2d at 436.

### IV. APPLICATION OF THE *TERRY* STOP TWO-TIERED INQUIRY

Valadez does not dispute the legality of the initial stop. Rather, he argues that the traffic stop was unlawfully extended beyond the point when the officer was aware that no traffic violation had occurred; and therefore violates the second prong of the *Terry* inquiry.

Trooper Slubar stopped Valadez for the purpose of investigating whether the registration sticker on Valadez's vehicle was valid and to determine whether the window tinting was legal.

6

The facts of the case clearly indicate that Slubar realized that the registration sticker was valid when he made initial contact with Valadez.  However, Slubar was still uncertain as to the legality of the window tinting.  Thus, the only remaining purpose of the investigative stop was to determine whether the window tinting was illegal.

The government provides no evidence of any articulable, reasonable suspicion or probable cause that would have authorized Slubar to continue to detain Valadez once Slubar had determined that the window tinting was legal.  The Fifth Circuit cases cited by the government in support of its proposition that Slubar was allowed to continue the stop pending the results of the computer checks can be distinguished from the case at hand.  *See Dortch*, 199 F.3d at 198; *Shabazz*, 933 F.2d at 438.  In those cases, the officers that requested the computer checks had articulable, reasonable suspicion of wrongdoing that justified the continued detention of the drivers pending the results of the computer checks.  *See Dortch*, 199 F.3d at 195-96 (observing driver "traveling too close to a tractor-trailer" in a vehicle "rented to a third party" and not being "listed as an authorized driver"); *Shabazz*, 933 F.2d at 438 (observing driver and passenger "exceeding the speed limit" and giving "conflicting answers concerning their recent whereabouts").

In the instant case, however, there is simply no evidence to

7

support a claim of reasonable suspicion beyond that which led to the initial stop.  Further detention was not lawful after the point at which the purposes of the stop was resolved -- that is, when Officer Slubar determined that Valadez had a proper inspection sticker and proper window tinting.  There was then no further reason to detain Valadez, and all that followed thereafter contravened Valadez's Fourth Amendment rights.  Therefore, because the relevant period of lawful detention at issue expired, all evidence that followed, including Valadez's responses to the questions, his guns, and his criminal record should be suppressed.

## V.  CONCLUSION

For the foregoing reasons, we reverse the district court's ruling denying Valadez's motion to suppress, vacate the judgment and sentence below, and remand for such proceedings as may be necessary but not inconsistent with this opinion.

ENDRECORD

8

GARWOOD, Circuit Judge, concurring.

I concur in Judge DeMoss's good opinion with these additional observations.

The government, of course, has the burden of justifying a warrantless detention. Here there is no sufficient evidence that a computer check was ever requested with respect to the validity of Valadez's driver's license or vehicle registration and the evidence clearly shows that it was not Officer Slubar's routine practice to run any computer checks on vehicles stopped for traffic violations. As I see it, then, the ruling below can only be sustained if we were to hold that detention may lawfully be extended, *beyond* the time it has become apparent there is neither probable cause nor reasonable suspicion the detained party has committed any offense, to await the results of a previously requested, non-routine criminal history check. For the reasons stated by Judge DeMoss, I agree that we may not so hold.

I note, however, that arguably different considerations should apply to brief additional detention (after there is no longer any probable cause or reasonable suspicion of any violation) to await results of a *driver's license or vehicle registration check* which was requested while there was probable cause or reasonable suspicion, particularly if the request was pursuant to a standard operating procedure. The Supreme Court has indicated that in calculating Fourth Amendment reasonableness, in the context of vehicle stops and resulting brief detentions, the interests of the

state tend to be weighed more heavily, and those of the motorist less heavily, where the subject matter concerns the privilege of driving on the highway, *see Michigan Dept. of State Police v. Sitz*, 110 S.Ct. 2481 (1990); *Delaware v. Prouse*, 99 S.Ct. 1391(1979), and, conversely, that the interests of the state are weighed less heavily, and those of the motorist more heavily, where the subject matter is "the general interest in crime control." *City of Indianapolis v. Edmond*, 121 S.Ct. 447, 453 (2000). A criminal history check, unlike a driver's license or vehicle registration check, clearly relates only to "the general interest in crime control." Of course, *Prouse* precludes individualized *stops* (not based on reasonable suspicion) even to check on licenses and vehicle registration, and *Edmond* precludes fixed point type *stops* aimed at general narcotics crime control. But, here the *stop* was concededly lawful, and it is the *stop* which constitutes the principal intrusion on the interests of the motorist. The additional invasion of those interests occasioned by *briefly* prolonging the detention is comparatively minimal. And, the minimal extent of an intrusion into the motorist's interests is certainly a factor tending to support (though concededly not always sufficient to require) a determination of Fourth Amendment reasonableness. *See Sitz*, 110 S.Ct. at 2486-87.