UNITED STATES of America

v.

Samuel STAPLES, Jr.

No. DR 01–CR–632–WWJ.

United States District Court,
W.D. Texas,
Del Rio Division.

April 1, 2002.

Daniel P. Kinnicutt, Asst. U.S. Atty's Office, Dle Rio, CA, for Plaintiff.

Francisco Morales, Federal Public Defender's Office, for Defendant.

### MEMORANDUM OPINION AND ORDER

JUSTICE, Senior District Judge.

Defendant in the above-styled and numbered criminal action has moved to suppress evidence. An evidentiary hearing was held on the motion to suppress on March 11, 2002. The court has carefully considered the defendant's motion, the government's response, the evidence presented at hearing, and the applicable authorities. It is concluded that although the investigatory stop on defendant was justified, the scope of the detention extended beyond what is permissible under the Fourth Amendment. Accordingly, the motion to suppress will be **GRANTED.**

#### FACTUAL SUMMARY

In the pre-dawn hours of November 21, 2001, two agents of the United States Border Patrol were stationed at the side of Ranch Road 334 near Brackettville, Texas. This road, according to the government, is commonly used by alien smugglers to circumvent an immigration checkpoint between Del Rio and Uvalde. At approximately 5:45 a.m., the agents observed a Ford Explorer pass their parked patrol vehicle. The agents did not recognize the

Ford Explorer as being consistent with local traffic to and from nearby ranches. The agents observed that the vehicle appeared to be riding low in the back, and did not have attached to it any of the equipment commonly used on ranches in the area. Also, the agents noted that the vehicle appeared during the early morning "shift change," a period during which criminal traffickers purportedly attempt to take advantage of unpatrolled highways.

Based on these observations, the Border Patrol agents began to follow the Ford Explorer. According to the agents' testimony, the vehicle accelerated and crossed over the center yellow line at several turns. One of the agents testified that the vehicle appeared to be traveling faster than 90 miles per hour; however, the defendant disputes this testimony and claims that he was driving at only 65 miles per hour. As the agents continued to follow the vehicle, a license plate check revealed that the Ford Explorer was registered to a Del Rio resident. At this point, after having pursued the vehicle for seven miles, the agents decided to perform an immigration stop on the vehicle.

The Ford Explorer, driven by defendant, pulled over as soon as the agents activated their emergency lights. Defendant first exited his Ford Explorer, then immediately returned to the vehicle and closed his door after one of the agents ordered him to do so. The agents then approached defendant's vehicle. They observed that defendant appeared nervous, gripping the steering wheel and looking straight ahead. There were no passengers in the vehicle, and no signs of hidden illegal aliens. When defendant rolled down his window, the agents smelled a strong odor of cologne. They also observed two large suitcases and another black bag in the back of the Explorer. They confirmed that defendant was a United States citizen, then asked where he was going. Defendant said that he was on his way to visit family in nearby Campville. When asked if he was visiting Campville only for the day, defendant responded "no." When asked if he was on vacation, defendant responded "no." The agents then asked for permission to search the vehicle, and defendant consented. The search revealed 99 pounds of marijuana in the Explorer.

In his motion to suppress evidence, defendant makes two separate, yet related, contentions: first, the traffic stop was unlawful because the agents did not have reasonable suspicion; and second, the subsequent search was unlawful because it went beyond the intended scope of the investigation.

## WARRANTLESS STOPS UNDER THE FOURTH AMENDMENT

 The Fourth Amendment protects individuals from unreasonable search and seizure. Its protections extend to brief investigatory stops of persons or vehicles—such as traffic stops—that fall short of traditional arrest. *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002); *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In such cases, the Supreme Court has determined that a search warrant is unnecessary under the Fourth Amendment, as long as the government officer's action is supported by "reasonable suspicion" to believe that criminal activity "may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry*, 392 U.S. at 30, 88 S.Ct. 1868). Put another way, an investigatory stop must be justified by "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cor-*

*tez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). An officer's reliance on a mere "hunch" is insufficient to justify a stop. *Terry,* 392 U.S. at 27, 88 S.Ct. 1868. However, the likelihood of criminal activity need not rise to the level required for probable cause, and may fall considerably short of satisfying a preponderance of the evidence standard. *Sokolow,* 490 U.S. at 7, 109 S.Ct. 1581.

■ Even if a warrantless search is justified by legitimate law enforcement interests, the search must be carefully tailored to its underlying justification. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). As the Supreme Court has explained, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* Once an officer's suspicions have been verified or dispelled, the detention must end unless there is additional, articulable, reasonable suspicion. *United States v. Valadez,* 267 F.3d 395, 397 (5th Cir.2001). The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. But as the Supreme Court has made clear, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer,* 460 U.S. at 500, 103 S.Ct. 1319.

■ In determining whether reasonable suspicion exists in the context of an investigatory stop, a court must look at the "totality of the circumstances" to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Cortez,* 449 U.S. at 417–418, 101 S.Ct. 690. The Supreme

Court has acknowledged that the concept of reasonable suspicion is "somewhat abstract." *Arvizu,* 534 U.S. at ——, 122 S.Ct. at 750. However, the recent opinion in *Arvizu* emphasized that a court may not evaluate the factors in isolation of each other. Rather, the "totality of the circumstances" approach requires the court to consider the officer's observations and inferences as a comprehensive picture of the situation that, as a whole, may or may not justify reasonable suspicion. *See id.* at 750–51. Even if each of the officer's observations is by itself susceptible to an innocent explanation, a court may not take a "divide-and-conquer" approach. In other words, a court may not conclude, merely because no single observation alone justifies reasonable suspicion, that the totality of the circumstances does not justify reasonable suspicion. *See id.* at 751.

### THE INITIAL STOP

■ Applying the Fifth Circuit's formulation of the Fourth Amendment, the Border Patrol agents had reasonable justification to make the initial stop on defendant's vehicle. The court finds that the stop was made at a relatively short distance from the Mexican border, that Ranch Road 336 was commonly used by alien traffickers to bypass a Border Patrol checkpoint, that defendant's Ford Explorer was inconsistent with local ranch traffic, that defendant's vehicle appeared to ride low in the back and not have any ranch equipment attached to it, and that defendant drove erratically and at high speed when pursued by the government agents.[1] Considering the totality of the circumstances along with rational inferences from these

---

1. As indicated in the factual summary, the government also presented evidence that defendant's vehicle was observed during a "shift change," and that defendant's vehicle was registered to a resident of Del Rio. The court finds that these two facts—considered within the totality of the circumstances of this criminal action—lack probative value as to whether defendant was engaged in criminal activity.

circumstances, the agents had reasonable suspicion of illegal immigration activity.

■ As with other government officers, Border Patrol agents may stop a vehicle for investigatory purposes only if they are aware of specific articulable facts, together with rational inferences from these facts, that reasonably warrant suspicion of criminal activity. *See United States v. Orozco,* 191 F.3d 578, 581 (5th Cir.1999) (citing *Brignoni–Ponce,* 422 U.S. at 884, 95 S.Ct. 2574). The Fifth Circuit commonly refers to eight factors when deciding whether a government agent had reasonable suspicion to stop a vehicle:

 (1) proximity of the area to the border;

 (2) known characteristics of the area;

 (3) usual traffic patterns on that road;

 (4) agents' previous experience in detecting illegal activity;

 (5) information about recent illegal trafficking in aliens or narcotics in the area;

 (6) particular aspects or characteristics of the vehicle;

 (7) behavior of the driver; and

 (8) the number, appearance, and behavior of the passengers.

*See Orozco,* 191 F.3d at 581; *United States v. Samaguey,* 180 F.3d 195, 198 (5th Cir. 1999). These eight factors are by no means exclusive, and no one specific fact is controlling. *United States v. Guerrero–Barajas,* 240 F.3d 428, 432–433 (5th Cir. 2001).

Viewing the totality of the circumstances, and guided by the eight factors outlined in *Orozco,* the court concludes that the Border Patrol agents had reasonable suspicion to make the initial immigration stop. First, it is undisputed that the Border Patrol agents were stationed in an area approximately 40 miles from the Mexican border. Though the Fifth Circuit does not employ a bright line test with regard to this first factor, recent case law suggests that a vehicle traveling less than 50 miles from the border is close enough to

support an inference of reasonable suspicion. *See Orozco,* 191 F.3d at 581; *United States v. Villalobos,* 161 F.3d 285, 289 (5th Cir.1998). Also, agents testified convincingly that the road on which they stopped defendant, Ranch Road 334, was commonly used for smuggling because it circumvents the United States Immigration Checkpoint located on Highway 90. As for defendant's Ford Explorer, agents testified that the vehicle appeared to be riding low in the back, that they did not recognize the vehicle as regular ranch traffic, and that the vehicle did not have any of the ranch equipment common to vehicles in the area. While pursuing defendant on Ranch Road 336, agents observed that the vehicle was traveling faster than the speed limit and swerving over the road's center stripe. More generally, the Border Patrol agents testified that they have training and experience in detecting illegal activity near the border, and the court takes this expertise into account as well in assessing the reasonableness of the agents' inferences from the surrounding circumstances. It is important to recognize that, at the moment the agents chose to perform the immigration stop, they knew nothing about the vehicle's driver, passengers, or contents— information that would have been far more probative of potential criminal behavior than the agents' general experience and limited observations of a moving vehicle. The court concludes, based on the circumstances known and unknown to the Border Patrol agents when they activated their emergency lights, that the initial immigration stop did not violate the Fourth Amendment as it is interpreted in the Fifth Circuit.

### The Continued Detention

Defendant argues, in the alternative, that the agents were not permitted to continue the detention of defendant's vehicle once they were satisfied that he was a

United States citizen and was not transporting human contraband. Defendant contends that the court should suppress any evidence discovered as the result of a search conducted after the agents' suspicions of illegal immigration activity had been dispelled. The argument is meritorious.

In *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Supreme Court ruled that the scope of a warrantless search must be carefully tailored to its underlying justification. The Fifth Circuit later illustrated this rule with the following example:

> [W]hen a police officer reasonably suspects only that someone is carrying a gun and stops and frisks that person, the officer, after finding nothing in a pat down, may not thereafter further detain the person merely to question him about a fraud offense. This is not because the questioning itself is unlawful, but because at that point suspicion of weapons possession has evaporated and no longer justifies further detention. When the officer is satisfied that the individual is not carrying a gun, the officer may not detain him longer to investigate a charge lacking reasonable suspicion. At that point, continuation of the detention is no longer supported by the facts that justified its initiation.

*United States v. Shabazz,* 993 F.2d 431, 436 (5th Cir.1993) (citations omitted). In *Shabazz,* the defendant had been stopped for exceeding the speed limit. The Fifth Circuit ruled that the officers were justified in detaining the defendant until they completed the routine computer check of defendant's license and vehicle registration. The defendant in *Shabazz* had consented to a search of his car while the computer check was pending. Thus, because the detention remained lawful at the initiation of the search, evidence obtained

as a result of the search was admissible. *Id.* at 437.

In *Valadez,* however, an officer making a traffic stop had dispelled his suspicions without the aid of a computer check, and the Fifth Circuit ruled that the ensuing detention exceeded its permissible scope. *Valadez,* 267 F.3d at 398. An officer had stopped Valadez to investigate the registration sticker and window tinting on Valadez's vehicle. After the officer had checked the registration and inspected the window tinting—and concluded that both were lawful and valid—he further questioned the defendant and obtained incriminating statements. The Fifth Circuit ruled that "there was no further reason to detain Valadez" once the officer had determined that the registration and window tinting were legitimate, and concluded that all statements and evidence subsequently obtained were inadmissible. *Id.* at 398–99. The *Valadez* opinion distinguished *Shabazz,* explaining that "the officers that requested the computer checks [in *Shabazz* ] had articulable, reasonable suspicion of wrongdoing that justified the continued detention of the drivers pending the results of the computer check." *Id.* at 398. Of course, both *Valadez* and *Shabazz* were decided based on the totality of the circumstances of each case, and the Supreme Court has recognized that this approach "may render appellate review less circumscribed by precedent than otherwise." *Arvizu,* 534 U.S. at ——, 122 S.Ct. at 752. Nevertheless, if nothing else, Fifth Circuit precedent indicates that completion of a registration check is an additional factor relevant to whether continued detention is justified by reasonable suspicion.

█ In the instant criminal action, the Border Patrol agents' testimony reflects that they performed an *immigration* stop. The government does not contend that the agents had reasonable suspicion to stop

defendant for illegal drug activity. In fact, the government argues that the initial immigration stop was justified because "there was reasonable suspicion for the Border Patrol agents to believe that the defendant was involved in illegal activity, *specifically, alien smuggling*." Gov't Resp. to Mot. to Supp. Evid., at 4 (emphasis added). At the time of the stop, agents had already completed a registration check, and it revealed no evidence to support reasonable suspicion of any other type of criminal activity. Thus, the only purpose of the investigative stop was to determine whether defendant was, or was to be, involved in an immigration crime. The government is obligated to provide evidence of articulable, reasonable suspicion that would have allowed the agents to continue to detain defendant once they determined that there were no illegal immigration activity to be investigated.

The government presented the following evidence to support the continued detention and eventual search: defendant exited his vehicle immediately after being stopped, defendant appeared nervous when the agents approached his vehicle, agents smelled a strong odor of cologne once defendant rolled down the front window on the driver's side, and agents did not believe defendant when he said he was on his way to visit relatives.

This evidence is woefully inadequate to support reasonable suspicion of drug-related criminal activity. The government first argues that some smugglers exit their vehicle upon being stopped in an effort to distance themselves and police officers from their vehicle. However, one of the agents conceded in testimony that ordinary motorists often exit their vehicles in the same manner after being stopped. Moreover, defendant returned to his vehicle immediately after he was ordered to do so, and he remained there. Thus, it is unreasonable to believe that defendant somehow intended to keep himself and the agents away from his vehicle.

Second, the government argues that defendant's behavior once back in the vehicle—gripping the steering wheel and looking straight ahead—was suspicious. However, this behavior is perfectly consistent with that of an innocent motorist. In fact, if defendant had placed his hands out of view, then the agents may have rationally suspected that defendant would attempt to reach for a weapon. Also, both agents testified that if defendant had been observing the agents through his mirrors, his behavior would have been considered suspicious. Thus, if anything, defendant's "nervous" behavior weighs *against* reasonable suspicion of illegal activity.

As for the smell of cologne, the government presented no evidence, other than the testimony of the Border Patrol agent, linking the presence of cologne to criminal activity. Though the smell of cologne might not *dispel* an officer's suspicion, it is unreasonable to infer that the smell of cologne—without other direct evidence of illegal drugs—*indicates* drug-related activity.[2]

---

**2.** The Fifth Circuit has found that the smell of cologne may contribute to reasonable suspicion of drug activity—when the smell of marijuana is also apparent. *See United States v. Sawyer*, 849 F.2d 938, 939 (5th Cir.1988) (agents detected odors of marijuana and cologne emanating from suitcase); *United States v. Jaquez*, 849 F.2d 935, 937 (5th Cir.1988) ("agents' detection of a marijuana odor, along with the other facts present, supplied ... the requisite probable cause"). Thus, these cases are distinguishable from the instant criminal action. The Third Circuit more recently found that the presence of cologne and air freshener was not probative in determining whether probable cause existed to justify a drug-related forfeiture. *See United States v. Ten Thousand Seven Hundred Dollars*, 258 F.3d 215, 227 (3rd Cir.2001).

Finally, the government argues that defendant's claim that he was on his way to visit his family lacked credibility, because defendant had two pieces of luggage in the vehicle and said he was not on vacation. Defendant points out, semantically speaking, that a person can visit family or carry luggage without being on vacation. Though the court makes no determination as to the validity of defendant's story, it is hardly unbelievable enough to support an appreciable inference of illegal drug activity. To summarize, in evaluating whether the agents had reasonable suspicion to continue the detention, the court ascribes minimal significance to the defendant's nervous behavior, the smell of cologne, and the allegedly implausible alibi.

Of course, at this stage of the analysis, the totality of the circumstances must still include the factors that influenced the agents to make the immigration stop in the first place. Thus, the distance from the Mexican border, the use of Ranch Road 336 by alien traffickers, the agents' unfamiliarity with defendant's Ford Explorer, the lack of ranch equipment, and defendant's erratic driving remain relevant to whether the continued detention and subsequent search were lawful.

However, these facts carry far less weight when juxtaposed against the new evidence that came to light after the stop. Defendant cooperated fully with agents when they ordered him to return to his vehicle. Defendant remained in the driver's seat and kept his hands still when the agents approached him. Defendant was a citizen of the United States. His vehicle had no visible passengers, and no sign of hidden passengers. There were no firearms. There was no visible sign of drugs, drug paraphernalia, or drug packaging. There was no smell of drugs. There was no heavy cargo, thus casting into doubt the agents' impression that the Ford Explorer was riding low in the back.

As explained above, the Border Patrol agents had reasonable suspicion to perform the initial immigration stop because during the pursuit they knew almost nothing about the vehicle or its driver. The surrounding circumstances, combined with the agents experience and training, allowed them to reasonably infer that the unknown vehicle and driver were possibly engaged in criminal activity. But after they made the stop, they had the opportunity to look into the vehicle, question defendant, and determine that he was not involved in any immigration crime. The stop's *raison d'être* had proved illusory. These newly apparent facts, and the rational inferences made therefrom, weigh overwhelmingly against the circumstances that initially led the agents to make the initial stop, and are far more probative than any inferences to be drawn from the odor of cologne, defendant's nervous behavior, and the agents' disbelief of defendant's story. Viewing the totality of the circumstances—that is, the agents' training and experience, the characteristics of the area and the road, the agents' observations of the Ford Explorer during the pursuit, defendant's behavior after the stop, and the agents' observations of the vehicle after the stop—the Border Patrol agents' continued suspicion of ongoing or imminent criminal activity was unreasonable. In other words, "the continuation of the detention [was] no longer supported by the facts that justified its initiation." *Shabazz,* 993 F.2d at 436.

To conclude, further detention was unlawful after the point at which the Border Patrol agents determined that defendant was a United States citizen and harbored no illegal aliens in his vehicle. The relevant period of lawful detention had expired. "There was then no further reason to detain [defendant], and all that followed thereafter contravened [his] Fourth Amendment rights." *Valadez,* 267 F.3d at

398. Therefore, the court is obligated to suppress all evidence seized as a result of the search of the vehicle, and suppress all statements made by defendant during and after the search.

Accordingly, defendant's motion to suppress evidence shall be, and is hereby,

**GRANTED.**