

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-09-00046-CR

Thomas Paul **TUCKER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR08-11125
Honorable Spencer W. Brown, Judge Presiding

### OPINION ON APPELLANT'S MOTION FOR REHEARING AND MOTION FOR EN BANC RECONSIDERATION

Opinion by:      Patricia O. Alvarez, Justice

Sitting en banc:     Catherine Stone, Chief Justice
Karen A. Angelini, Justice
Sandee Bryan Marion, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice; dissenting opinion to follow
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice[1]

Delivered and Filed:  May 22, 2013

AFFIRMED

On the court's own motion, we withdraw the panel opinion and judgment of December

12, 2012, and substitute this en banc opinion and judgment.  Appellant's motion for leave to file

---

[1] Justice Chapa would have requested a response to the motion for en banc reconsideration.

an oversized motion for rehearing and en banc reconsideration is granted. Appellant's motions for rehearing and en banc reconsideration are denied. *See* TEX. R. APP. P. 49.3, 49.7.

Appellant Thomas Paul Tucker was found guilty of the offense of possession of marihuana in an amount of less than two ounces within a drug free zone. Tucker was assessed punishment at ninety-days confinement in the Kerr County Jail, a fine of $1,000.00, and court costs of $353.00. Tucker asserts the trial court erred in denying his motion to suppress the search of his residence because the totality of the circumstances shows Tucker's consent to search his residence was coerced, given under duress, and involuntary.

On July 28, 2010, the panel issued an opinion that affirmed the trial court's judgment. The panel noted that it did not review a video recording that the trial court did not review. However, in its June 20, 2012 opinion, the Court of Criminal Appeals reversed this court's judgment. *Tucker v. State*, 369 S.W.3d 179 (Tex. Crim. App. 2012). It remanded the appeal to this court with instructions to, *inter alia*, review the video recording and determine whether the evidence supports the trial court's implicit finding that Appellant's consent to search his residence was voluntary. On December 12, 2012, the panel issued its opinion after remand, and Tucker filed a motion for rehearing and a motion for en banc reconsideration.

Having reviewed the video recording as directed, and having considered the totality of the circumstances, we conclude that the record shows the trial court did not abuse its discretion by its implicit finding that the State proved by clear and convincing evidence that Tucker's consent was voluntary. We further conclude that the trial court acted within its discretion by denying Tucker's motion to suppress the search of his residence. Therefore, we affirm the trial court's judgment.

**BACKGROUND**

On July 31, 2008, James Hicks, an investigator for the Kerr County Sheriff's Department's Narcotics Division, received information that an anonymous source had reported that Tucker was dealing marihuana from his house. The following day, Hicks saw Tucker leave his home in a white van. Hicks observed Tucker failing to use his turn signal when making a right-hand turn onto a street. Hicks immediately contacted Byron Griffin, also an investigator with the Kerr County Sheriff's Department's Narcotics Division, and directed Officer Griffin to stop Tucker for his traffic violation. Griffin did so.

As Tucker stopped his vehicle in a convenience store parking lot, Officer Johnson arrived at the scene to assist Griffin. The traffic stop and subsequent vehicle search was recorded by a video camera in Griffin's car. At Griffin's instruction, Tucker exited his van; he left the driver's door fully open. After Tucker gave his driver's license to Griffin, Griffin patted Tucker down and found nothing. Tucker then asked the officers if he could remove his young son from the van because it was hot and the van had no air conditioning. The officers responded that the stop would not take long and his son could remain in the van for the time being. Griffin issued Tucker a warning citation for the turn signal violation and returned Tucker's driver's license to him. The citation was given approximately seven minutes after the initial stop. For approximately one minute, Griffin and Tucker engaged in a short conversation about the warning citation. Griffin then asked Tucker if he had contraband in his vehicle. Tucker responded that he did not. Griffin asked Tucker if he could search the vehicle, and Tucker promptly gave his consent—less than nine minutes after the initial stop.

At that point, the officers began to search the vehicle. Griffin opened both rear cargo doors and then walked around to the driver's door. Johnson looked under the hood, then walked

to the passenger's side and looked inside. Johnson immediately noticed small pieces of marihuana on the passenger's side floorboard. Griffin handcuffed Tucker and informed him that he was being detained for possession of marihuana. Griffin performed a second pat-down of Tucker and found nothing. Griffin informed Tucker that if he was taken to jail with "anything on him," he could be charged with a felony. Griffin asked Tucker if he had marihuana in his shoes; Tucker responded that he did. Griffin directed Tucker to remove his shoes. Griffin found a small plastic bag which contained 10.21 grams of marihuana. The officers found no other contraband on Tucker's person or in his vehicle. Tucker testified that he asked several times that his son be removed from the van, but the officers left Tucker's son inside the vehicle (during the first thirty-two minutes of the thirty-six minute traffic stop).

After locating the marihuana in Tucker's shoe, Officer Griffin informed Tucker that they had information that he was selling marihuana from his residence, and Griffin repeatedly asked permission to search Tucker's residence. Tucker responded that his two-year-old child was in the van and told Griffin that he would give his consent to search his residence if Griffin would take his son back to Tucker's residence.

At the motion to suppress hearing, during cross-examination, Tucker testified that he voluntarily consented to the search. On redirect, Tucker testified that he felt coerced into giving consent to search his home. Tucker's counsel asked Griffin: "[I]sn't it true that you denied Mr. Tucker's right to take the child out of the vehicle until ultimately you got consent to search the house?" Griffin responded: "That's incorrect."

Tucker was charged with possession of less than two ounces of marihuana in a drug-free zone. Tucker filed two motions to suppress. One sought to suppress the evidence collected from

the van; the other sought to suppress the evidence collected from his residence. Both motions were denied. Tucker pleaded *nolo contendere* to a single charge[2] and this appeal followed.

<h2 style="text-align:center">STANDARD OF REVIEW</h2>

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When a question turns on credibility and demeanor, we view the evidence in the light most favorable to the trial court's ruling and give "'almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.'" *Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006) (quoting *Guzman*, 955 S.W.2d at 89). We give the same deference to the trial court's rulings on mixed questions of law and fact "'if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.'" *Montanez*, 195 S.W.3d at 106 (quoting *Guzman*, 955 S.W.2d at 89). We review other mixed questions of law and fact and questions of law de novo. *Montanez*, 195 S.W.3d at 106; *Guzman*, 955 S.W.2d at 89. If no findings of fact were requested or filed, we "impl[y] the necessary fact findings that would support the trial court's ruling if the evidence (viewed in the light most favorable to the trial court's ruling) supports these implied fact findings." *Kelly*, 204 S.W.3d at 818–19; *accord State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). In effect, our responsibility is to determine "whether, after affording almost total deference to the trial

---

[2] The Information charged Tucker with possessing two ounces or less of marihuana "within 1000 feet, on or near real property a school, namely, 204 Childs Street, Ingram, Texas, to-wit: Ingram High School." It is undisputed that 204 Childs Street, Ingram, Texas is the address for Tucker's residence. The State acknowledges that it "mistakenly inserted [Tucker's] residential address as the address for Ingram High School." The State also asserts that "the record is clear that the marihuana at issue was found in [Tucker's] vehicle when stopped at the establishment called the Dam Store, which is within 1,000 feet of Ingram High School." At the motion to suppress hearing, neither party established the Dam Store's address, the store's distance from Ingram High School, or the distance from Tucker's residence to Ingram High School. Tucker asserts that the marihuana in question is that from his residence. Neither Tucker nor the State raised the matter of the incorrect Information address at the hearing.

court's determination of historical facts that are supported by the record, the trial court abused its discretion by finding that the State proved by clear and convincing evidence that [the appellant] voluntarily consented to the [challenged] search." *See Montanez*, 195 S.W.3d at 108; *see also Guzman*, 955 S.W.2d at 89.

MOTION TO SUPPRESS

On remand, Tucker does not challenge the validity of the initial traffic stop and detention, nor does he challenge the validity of the search of his vehicle. However, he asserts his consent to search his residence was involuntarily given, leading to an illegal seizure of evidence from his residence. We disagree.

## A. Coercion and Involuntariness of Consent

For consent to be valid, it must "'not be coerced, by explicit or implicit means, by implied threat or covert force.'" *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973)). Consent must be given freely, unequivocally, and without duress or coercion. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991). "The ultimate question is whether the suspect's will was overborne" by the officer's actions. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). The trial court must examine the voluntariness of a consent based on the "totality of the circumstances from the point of view of an objectively reasonable person, including words, actions, or circumstantial evidence." *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012); *see Creager*, 952 S.W.2d at 856. If the voluntariness of the consent is challenged at trial, the State must prove the voluntariness of a consent to search by clear and convincing evidence. *Montanez*, 195 S.W.3d at 105; *Carmouche*, 10 S.W.3d at 331. "If the record supports a finding

by clear and convincing evidence that consent to search was free and voluntary, we will not disturb that finding." *Carmouche*, 10 S.W.3d at 331; *see Guzman*, 955 S.W.2d at 89.

## B. Consent to Search the Residence

Tucker contends that the marihuana recovered from his house was the result of his coerced consent to search his residence. On appeal, Tucker points to the evidence that (1) the officers treated him "aggressively from the inception of the stop," (2) held him at the scene and questioned him for about seventeen minutes without giving him his *Miranda* warnings, and (3) delayed removing his son from the hot van. He asserts the totality of the circumstances shows that his consent to search his residence was coerced.

### 1. Delay In Removing Child From Van

In his briefs, Tucker emphasizes the coercive force exerted on him by the officers' refusing to remove his two-year-old son from his van on a hot summer day, especially because the van was not air conditioned. Tucker testified that the outside temperature was about 100 degrees (Fahrenheit). The recording reveals that about ninety seconds after Tucker stepped out of the van, Officer Johnson, standing at the van's open driver's door, leaned his head and shoulders into the van. Walking back towards Tucker, Johnson asked Tucker if he could check for weapons around the child. About three minutes after the stop, Officer Griffin asked Tucker if the air conditioning was on in his van. Tucker responded that his van did not have air conditioning. From off camera Johnson twice stated that it was cooler in the van than it was outside.

From the time Tucker consented to the search of his van (approximately nine minutes after the initial stop) until his son was removed from the van (approximately thirty-two minutes after the initial stop), the recording shows Tucker twice asked the officers to remove his son

from the hot van. Tucker made both requests within a thirty-second period approximately sixteen minutes after the initial stop. The recording also provides information that weakens Tucker's assertions that he consented to the search of his residence because of the coercive force of his son being held in a hot van. It shows Tucker left the driver's door fully open when he exited the van; Griffin fully opened both rear cargo doors at nine minutes after the initial stop; the passenger side doors were opened at least intermittently during the search of the van; at least one officer was within arm's reach of the child for more than half of the period of the search; the left rear cargo door was not closed until twenty-four minutes after the stop; the right rear cargo door was not closed until Tucker's son was removed from the van—at about thirty-two minutes after the initial stop; and there are no visual or aural indications that the child was in any distress. In fact, the recording reflects environmental sounds and the officers' conversations with Tucker, each other, and passers-by, but does not reflect any sounds made by the child.

### 2. Constitutional Warnings

On appeal, Tucker complains that the officers' failure to give him his *Miranda* warnings had a coercive effect that made his consent to search his residence involuntary. At the hearing, Tucker did not argue that he was not warned, and Griffin did not testify that he warned Tucker. The recording does not show whether Tucker was warned.[3]

### 3. Length of Detention, Nature of Questioning

At the hearing, Tucker argued that he was detained for almost forty minutes from the time he was stopped until he was driven from the scene to his home. The recording shows that Tucker consented to a search of his van about nine minutes after he was stopped, he was

---

[3] Tucker and the State agree that the poor audio quality for a period of about four minutes—during which one or both officers are talking to Tucker—makes some portions of those conversations unintelligible. Nevertheless, it was the State's burden to prove by clear and convincing evidence that Tucker's consent was voluntary. *See Montanez*, 195 S.W.3d at 108; *Carmouche*, 10 S.W.3d at 331.

handcuffed about twelve minutes after he was stopped, and he gave consent to search his residence about twenty-nine minutes after he was stopped. Thus, the record shows he was detained and questioned for approximately seventeen minutes. Tucker was not questioned in view of the camera, but the audio portion of the recording captures much of the officers' questions to Tucker and some of Tucker's responses.

After the officers searched the van, Officer Griffin told Tucker "[w]e know you are selling pot out of your house. So either you can take us to it, and nobody will go to jail, and we won't call CPS, or we'll get a search warrant." Griffin's testimony and the recording show that the nature of the questioning was direct, including the officers criticizing Tucker for lying to them. Tucker testified he agreed to the residential search because he was told he would not go to jail that day if he cooperated. Griffin testified that he did not withhold permission to take the child out of the van until Tucker consented to a search of his residence.

## C. Analysis

To determine whether Tucker's consent to search his residence was voluntary, the trial court had to "assess the totality of the circumstances from the point of view of an objectively reasonable person, including words, actions, or circumstantial evidence." *Tucker*, 369 S.W.3d at 185.

### 1. *No Findings of Fact*

The trial court did not make findings of fact, so we view the evidence in the light most favorable to the trial court's denial of Tucker's motion to suppress the search of his residence and imply those findings necessary to support the ruling. *See Kelly*, 204 S.W.3d at 819; *Montanez*, 195 S.W.3d at 106. Because the trial court could not have properly denied Tucker's motion to suppress if it found his consent was coerced, we assume the trial court implicitly found

the State proved by clear and convincing evidence that Tucker's consent was voluntary. *See Kelly*, 204 S.W.3d at 819; *Montanez*, 195 S.W.3d at 108.

### 2. *Voluntariness of Consent Factors*

The trial court was obligated to consider the totality of the circumstances surrounding Tucker's consent including the delay in removing Tucker's son from the van, the length of Tucker's detention, the nature of his questioning, and whether Tucker was properly warned. *See Tucker*, 369 S.W.3d at 185. It was faced with the conflicting testimony of Tucker's assertion that the officers used his son as a pawn to obtain Tucker's consent to search his residence and Griffin's explicit denial of such allegations. The trial court heard Tucker admit on cross-examination that he *voluntarily* consented to the search, but then on redirect testify that he felt coerced to consent. The trial court was free to believe Tucker's admission that he voluntarily consented to the search and disbelieve his later statement that he felt coerced. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *McFadden v. State*, 283 S.W.3d 14, 17 (Tex. App.—San Antonio 2009, no pet.). Further, the trial court was not presented with any testimony from Tucker on whether he was warned or knew he could refuse consent to search his residence, nor from Griffin on whether Tucker was given his *Miranda* warnings. The trial court heard Tucker testify that the entire stop was no more than forty minutes from the time he was pulled over until he was driven to his home.

Given the evidence in the record and the trial court's discretion as fact-finder, the trial court was free to give great weight to Tucker's testimony that he voluntarily consented to the search of his residence, to Griffin's testimony that the child was not used to coerce Tucker's consent, and Griffin's testimony that Tucker was very cooperative in the search of his residence

to find that Tucker's consent to search his residence was voluntary and not coerced. *See Ross*, 32 S.W.3d at 855 (fact-finder's discretion).

### 3. *Review of Circumstances*

We have reviewed the totality of the circumstances surrounding whether Tucker's will was overborne when he gave consent to search his residence. *See Tucker*, 369 S.W.3d at 185. We have considered, *inter alia*, the question of *Miranda* warnings, the length of the detention, the nature of the questioning, and the contents of the video recording. We have viewed the evidence in the light most favorable to the trial court's ruling, and have afforded almost complete deference to the trial court's determination of historical facts that are based on its assessment of credibility and demeanor that are supported by the record. *See Montanez*, 195 S.W.3d at 106. Having done so, we cannot conclude that the trial court abused its discretion in its implicit finding that the State proved by clear and convincing evidence that Tucker knowingly, intelligently, and voluntarily consented to the search of his residence. *See id.* at 108; *Carmouche*, 10 S.W.3d at 331; *Cadoree v. State*, 331 S.W.3d 514, 520 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

### CONCLUSION

We conclude that the record, including the video recording, does not show that the trial court abused its discretion in its implicit finding that the State proved by clear and convincing evidence that Tucker's consent to search his residence was voluntary. Thus, the trial court did not err in denying Tucker's motion to suppress the evidence seized from the search of his residence. Therefore, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH

- 11 -