# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50974

United States Court of Appeals
Fifth Circuit

**FILED**
August 19, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

RODNEY D. DAVIS,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:13-CR-229

Before WIENER, CLEMENT, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:[*]

Rodney Davis appeals the district court's denial of his motion to suppress evidence found in his car following a stop for a traffic violation. We AFFIRM.

## FACTS AND PROCEDURAL BACKGROUND

In August 2013, Joel Smith, a trooper with the Texas Department of Public Safety ("DPS"), stopped Davis for speeding on Interstate 45. When

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Smith approached Davis's car, he spotted a large pit bull in the back seat barking and lunging at the window. Because of the dog, Smith asked Davis to step out of the car. While exiting the vehicle, Davis warned Smith that the dog was not friendly. Davis handed Smith his driver's license but was unable to offer proof of car insurance. Because of the heat and road noise, Smith had Davis sit in the front passenger seat of his police car.

Once inside the car, Smith began a computer check of Davis's driver's license and the vehicle's license plate, both of which were issued in Ohio. While running the check, he questioned Davis about his trip. Davis said he was traveling to Dallas to visit his uncle and then planned to return to Houston, where he was signed to a record label as a rapper. Smith was suspicious of the "turnaround trip" because of the dog's presence and what he called the "lived in look" of Davis's vehicle. He also observed that Davis sweated, stuttered, evaded eye contact, and appeared "abnormally nervous." Although it was a hot day, Smith noted that Davis continued to sweat while sitting in the air-conditioned patrol car. While in the car, Davis again mentioned that the dog was not friendly. The frequent comments about the dog's dangerousness gave Smith the impression that Davis did not want him to go near the car. Smith had learned in interdiction classes that large dogs are sometimes used to deter searches while transporting narcotics.

After informing Davis that he was going to issue him a warning for speeding, Smith noticed Davis's prior drug charges displayed on the computer. When he asked Davis about his criminal history, Davis made what Smith perceived to be conflicting statements before stating that he did not want to talk about his history. Smith later said that based on the fact that Davis's vehicle was registered to a third party, his nervousness, the pit bull in his car, his criminal history, his "implausible travel plans," and I-45's reputation as a

No. 14-50974

"known drug corridor," Smith asked Davis whether there was anything illegal in his vehicle. Davis said there was not. At this point, 14 minutes after the stop, Smith requested permission to search Davis's vehicle. Davis refused. Thereafter, Smith contacted the DPS canine unit in Madisonville. That unit was unavailable, so he contacted a canine unit with the Madisonville Police Department, which was located approximately 30 miles away. The Madisonville unit arrived 30 minutes later and 51 minutes after the initial stop. Upon arrival, the canine immediately alerted to Davis's car. During a search of the vehicle, officers recovered a handgun and cocaine.

Davis was charged with possession with intent to distribute cocaine, possession of a firearm during the commission of a drug-trafficking offense, and possession of a firearm by a convicted felon. Prior to trial, Davis filed a motion to suppress. At the suppression hearing, Smith recounted the stop and subsequent search. Davis also testified. He claimed the car belonged to his sister, and that he traveled with his dog because it was sick and he had no one to take care of it. He denied stuttering, evading eye contact, or sweating during the stop, but agreed that he had not wanted to discuss his criminal history. He testified that he did not consent to the search of his car because he did not believe Smith possessed reasonable suspicion.

The court denied the motion. It determined that Smith's questioning of Davis during the registration and license check was proper, and that the questioning and circumstances gave rise to a reasonable suspicion that Davis was involved in criminal activity. The court also determined that the 30-minute delay in the canine unit's arrival was reasonable under the circumstances. As a result, the court held that the search did not violate the Fourth Amendment.

3

No. 14-50974

Following a bench trial, Davis was convicted of all three charges.  He timely appealed the denial of his motion to suppress.

DISCUSSION

When considering the denial of a motion to suppress, this court reviews factual findings for clear error and the legality of police conduct *de novo*. *United States v. Pack*, 612 F.3d 341, 347 (5th Cir.), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010).  "Factual findings are clearly erroneous only if a review of the record leaves this [c]ourt with a definite and firm conviction that a mistake has been committed."  *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009) (citation and internal quotation marks omitted). The clear error standard is particularly deferential when the "denial of a suppression motion is based on live oral testimony . . . ."  *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (citation and internal quotation marks omitted).  Additionally, we view the evidence in the light most favorable to the prevailing party.  *Pack*, 612 F.3d at 347.

The legality of a traffic stop is examined under the two-pronged analysis described in *Terry v. Ohio*, 392 U.S. 1 (1968).  *See United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc).  First, the court examines whether the stop was justified at its inception.  *Id.*  Second, it determines whether the subsequent action was reasonably related to the circumstances that justified the stop or to dispelling a reasonable suspicion that arose during the course of the stop.  *Id.* at 506-07.  Reasonableness is determined in light of the totality of the circumstances.  *See id.* at 507.

As part of a traffic stop, a police officer may request a defendant's driver's license, insurance papers, and vehicle registration; run a computer check on those documents; and issue a citation.  *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993).  The officer may ask the defendant about the purpose of

4

his trip, and may also ask about unrelated matters so long as the questioning does not prolong the stop. *Pack*, 612 F.3d at 350. When the purpose of the stop is resolved, "the detention must end unless there is additional reasonable suspicion supported by articulable facts." *United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003).

Davis does not dispute the propriety of the stop or subsequent computer check of his driver's license and license plate. He contends, however, that the detention became unconstitutional when Smith continued to detain and question him after electing to issue a warning for the traffic violation. For support he relies on this court's decision in *United States v. Valadez*, 267 F.3d 395 (5th Cir. 2001). In that case, we held that an officer had no justification for detaining a defendant pending the results of a computer check because he had already determined that the defendant's registration sticker had not expired and that his window tinting was legal. *See id.* at 398. In doing so, we distinguished previous cases in which we held that traffic violations, including those for speeding, justified computer checks. *See id.* Because Davis was stopped for speeding and concedes that Smith was justified in running a computer check, *Valadez* is inapplicable.

The relevant caselaw is that which helps us analyze whether Smith possessed reasonable suspicion to justify his detainment of Davis *after* running the computer check. Factors such as nervousness, inconsistent stories, criminal history, use of another's vehicle, an out-of-state driver's license and license plates, and presence on a known drug-trafficking corridor may not suffice to create reasonable suspicion of criminal activity. *See United States v. Cavitt*, 550 F.3d 430, 434, 437-38, 438 n.5 (5th Cir. 2008); *United States v. Santiago*, 310 F.3d 336, 338, 342 (5th Cir. 2002); *United States v. Jones*, 234 F.3d 234, 237-38, 241-42 (5th Cir. 2000). Instead, to constitute "articulable

facts that support a reasonable suspicion" of wrongdoing, such factors must be coupled with "more concrete evidence that suggests the commission of a specific offense." *Cavitt*, 550 F.3d at 437 (citation and quotation marks omitted).

We find guidance in our caselaw as to the sort of "concrete evidence" that will establish reasonable suspicion. In several cases we upheld prolonged detentions when officers utilized their experience and training to identify evidence that a vehicle contained drugs, such as alterations to gas tanks or tires. *See United States v. Escareno Sanchez*, 507 F.3d 877, 882 (5th Cir. 2007), *vacated on other grounds*, 553 U.S. 1029 (2008); *United States v. Estrada*, 459 F.3d 627, 632 (5th Cir. 2006). We also have upheld extended detentions when factors such as nervousness and presence on a known drug-trafficking corridor were coupled with the fact that the defendant provided false or implausible information regarding his travel plans.[1] *See Pack*, 612 F.3d at 352, 361; *United States v. Fishel*, 467 F.3d 855, 856 (5th Cir. 2006); *Brigham*, 382 F.3d at 504, 508-09. Of course, such examples are necessarily illustrative rather than exhaustive, as reasonable suspicion is fact-intensive and turns on the totality of the circumstances. *See Brigham*, 382 F.3d at 507.

In addition to Davis's nervousness, criminal history, and presence on a known drug-trafficking corridor, the government also emphasizes factors that it contends make this case more similar to the cases in which this court has upheld prolonged detentions. Those factors include Davis's inconsistent

---

[1] In addition to these cases, the government discusses *Rodriguez v. United States*, 135 S. Ct. 1609 (2015). There, the Supreme Court held that a dog sniff conducted after the issuance of a traffic citation prolonged the stop and did not fall within the *de minimus* rule. *See id.* at 1616. The Court declined to address whether reasonable suspicion developed during the stop would have justified prolonging the detention; it remanded for further proceedings on this issue. *See id.* at 1616-17. Thus, *Rodriguez* is of limited relevance.

answers regarding his criminal history, his implausible travel plans, and the circumstances surrounding the pit bull in his car.

The first two factors likely do not suffice to establish reasonable suspicion. Although Smith indicated that Davis made inconsistent statements regarding his criminal history, he did not identify the statements, their inconsistencies, or the reason they aroused his suspicions. In contrast, the officers in *Brigham* and *Pack* identified specific inconsistencies, including contradictions in the statements made by the driver and his passengers regarding travel plans, conflicts in the driver's own statements, and fabrications about a passenger's identity. *See Pack*, 612 F.3d at 345-46; *Brigham*, 382 F.3d at 504-05.

The evidence of the implausibility of Davis's travel plans is also minimal. Smith said he doubted that Davis was traveling to Dallas to visit his uncle because he had a dog with him and his car looked "lived in." The district judge expressed skepticism about this explanation. Later, while addressing the prosecution, the judge noted that Smith "couldn't explain why" the trip appeared implausible. He also noted that a car's "lived in" look "doesn't mean anything." These observations comport with our precedent, which holds that travel plans whose implausibility is merely trivial or illusory do not suffice to justify an extended detention. *See United States v. Jenson*, 462 F.3d 399, 404-05 (5th Cir. 2006).

More compelling are the circumstances surrounding the pit bull in Davis's car. Smith knew from prior training that such dogs are often used to deter car searches when transporting narcotics. Additionally, Davis warned Smith twice that the dog was not friendly. During the second such instance he was sitting in Smith's patrol car, and Smith had not asked about the temperament of the dog or indicated that he intended to approach Davis's car.

7

Thus, when Davis abruptly reiterated the warning, Smith reasonably suspected that Davis was attempting to deter him from recovering illegal materials contained within the car.

We recognize that dogs accompany many travelers, and that if those dogs are unfriendly toward strangers, most owners would advise those approaching their vehicles to be wary. But the additional, out-of-context warning issued by Davis while sitting inside Smith's patrol car sets this case apart from the typical example. Taking this interaction together with the other factors enumerated by Smith, including Smith's training regarding dogs and Davis's nervousness, criminal history, and presence on a known drug-trafficking corridor, we hold that Smith possessed reasonable suspicion to prolong Davis's stop until the canine unit arrived.

AFFIRMED.