The **STATE** of Texas, Appellant,

v.

**Craig Allen KOTHE, Appellee.**

**No. 04–02–0199–CR.**

Court of Appeals of Texas,
San Antonio.

Sept. 17, 2003.

E. Bruce Curry, District Attorney, Kerrville, for Appellant.

David K. Chapman, Attorney At Law, Fort Worth, for Appellee.

Panel: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, and SANDEE BRYAN MARION, Justice.

**OPINION**

Opinion by PAUL W. GREEN, Justice.

**ON APPELLEE'S MOTION FOR REHEARING**

Craig Allen Kothe's motion for rehearing is granted. The opinion and judgment issued January 29, 2003 are withdrawn and the following is substituted.

\* \* \*

This is the State's appeal of an order granting Craig Allen Kothe's motion to suppress evidence seized during what he alleges was an illegal detention. TEX.CRIM. PROC.CODE ANN. art. 44.01(a)(5)(Vernon 2002). Kothe was indicted for possession of a controlled substance in the amount of less than one gram. Following arraignment on this charge, the trial court conducted a pre-trial hearing on Kothe's motion to suppress evidence including drug paraphernalia found in Kothe's vehicle and heroin found on Kothe's girlfriend, Jennifer Brantley. Kothe's motion was granted, and the trial court entered an order suppressing the evidence. The State appeals this order, bringing two issues before this court. First, the State argues the trial court erred in granting Kothe's motion to suppress because the search which uncovered the incriminating evidence was valid. Second, the State contends the trial court erred in granting Kothe's motion to suppress because Kothe did not have standing to challenge the search of Brantley.

*Background*

On July 24, 2001, Kendall County Deputy Van Forslund received a radio dispatch advising him that a vehicle was "driving erratically" on the interstate. Deputy Forslund responded to the dispatch and located the vehicle, driven by Craig Allen Kothe. Kothe's girlfriend, Jennifer Brantley, was also in the vehicle. Before Deputy Forslund was able to stop the vehicle, Kothe exited the highway, stopping at a rest area where the officer pulled up behind him.

Deputy Forslund first sent a radio dispatch, calling in the license plate registration number of Kothe's car. He then ap-

proached the vehicle, obtained Kothe's driver's license and proof of insurance, and ran a "routine computer check." As the computer check was running, Deputy Forslund conducted a field sobriety check and determined that Kothe was not intoxicated. At about the same time, a second officer arrived and conferred with Deputy Forslund regarding the incident. Shortly thereafter, Deputy Forslund made a second dispatch, this time to determine whether Kothe had any outstanding warrants. A few minutes later, the results of the inquiry came back negative. Deputy Forslund testified that once he had determined Kothe was not intoxicated and had no outstanding warrants he was prepared to let him leave. But before the officer released Kothe, he received a teletype from the Fredericksburg Police Department that described Kothe and the vehicle he was driving, and reporting that the vehicle contained a blue bank bag which held antique coins taken from a home safe. The teletype requested that the coins be confiscated, but that Kothe be released and the Fredericksburg Police Department notified. Deputy Forslund again approached Kothe's vehicle, this time to question Kothe regarding the coins. Kothe admitted to having the coins earlier but explained that he had changed them into paper currency. Deputy Forslund requested permission to search the vehicle for the blue bank bag and coins, and Kothe agreed. Following Kothe's verbal assent, the officer obtained a signed written consent to search the vehicle for the blue bank bag.

Deputy Forslund began his search in the front seat of the car. The center console was open, and the officer looked inside, discovering items which appeared to be drug paraphernalia.[1] Deputy Forslund stopped the search and questioned Brantley regarding the items found in the console. Brantley advised the officer that she had heroin on her person and that Kothe had instructed her to hide the drugs. Brantley was then searched, and the officers discovered two balloons of heroin in her clothing.

Kothe and Brantley were then arrested for possession of a controlled substance and possession of narcotics paraphernalia. Both Kothe and his vehicle were taken to the Kendall County Law Enforcement Center where law enforcement officers conducted an inventory search of Kothe's vehicle and obtained a written statement from Kothe exculpating Brantley.

Before trial, Kothe moved to suppress all evidence seized as a result of the stop, claiming the evidence was seized in violation of the Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution. The trial court agreed and granted Kothe's motion to suppress as to all items seized from "the defendant's person, his vehicle, or persons connected with defendant at the scene of (his) arrest or detention. . . ."

### The Validity of the Search

In its first issue, the State contends the trial court erred in granting Kothe's motion to suppress because the search in question was valid and no evidence was obtained in violation of either the Texas or the United States Constitutions.

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App.2002). Motions to suppress are subject to a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000). We defer

---

1. Deputy Forslund found a Coca–Cola can which was cut in half. The can had a scoured bottom, and a hypodermic needle was lying across the opening.

to the trial court's determination of the historical facts and rulings on mixed questions of law and fact. *Guzman v. State,* 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997); *Morfin v. State,* 34 S.W.3d 664, 666 (Tex. App.-San Antonio 2000, no pet.). However-er, we decide *de novo* whether the trial court erred in misapplying the law to the facts. *Carmouche,* 10 S.W.3d at 327; *Morfin,* 34 S.W.3d at 666.

 The Fourth Amendment protects individuals from unreasonable search and seizure. Traffic stops are considered seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *United States v. Valadez,* 267 F.3d 395, 397 (5th Cir.2001); *United States v. Shabazz,* 993 F.2d 431, 434 (5th Cir. 1993). Nevertheless, traffic stops are considered more similar to investigative detentions than formal arrests. *Valadez,* 267 F.3d at 397. Therefore, we analyze the legality of traffic stops for Fourth Amendment purposes under the standard articulated in *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The *Terry* standard has two prongs: (1) whether the officer's action was justified at its inception, and (2) whether the search and seizure was reasonably related in scope to the circumstances that justified the stop in the first place. *Terry,* 392 U.S. at 19–20, 88 S.Ct. 1868; *Valadez,* 267 F.3d at 398.

 Because Kothe never disputed the legality of the initial stop, the State's argument on appeal focuses on the second prong of *Terry,* the scope of the stop. The courts of both the United States and Texas have consistently held that any "investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Davis v. State,* 947

S.W.2d 240, 245 (Tex.Crim.App.1997); *Moore v. State,* 55 S.W.3d 652, 658 (Tex. App.-San Antonio 2001, no pet.). An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Royer,* 460 U.S. at 500, 103 S.Ct. 1319; *Davis,* 947 S.W.2d at 245; *Moore,* 55 S.W.3d at 658. Once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Ohio v. Robinette,* 519 U.S. 33, 41, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)(Ginsberg, J., concurring); *Davis,* 947 S.W.2d at 243. In other words, once an officer's suspicions have been dispelled, the detention must end unless there is additional, articulable, reasonable suspicion. *Valadez,* 267 F.3d at 398. Consequently, a detention that is not temporary and reasonably related in scope to the circumstances which justified the interference is unreasonable and, thus, violative of the Fourth Amendment. *Davis,* 947 S.W.2d at 243.

 The focus of the motion to suppress was on the estimated ten to twelve minute delay between the time when Deputy Forslund determined Kothe was not intoxicated to the time when Kothe was questioned about the bag of coins. Kothe says the reason for his detention ended as soon as it was determined he was not intoxicated, and his continued detention thereafter violated his Fourth Amendment rights. The State maintains that even after Deputy Forslund determined Kothe was not intoxicated, the officer had a reasonable period of time in which to complete his investigation, and it was during that time that probable cause arose to justify Kothe's continued detention.

Although the authorities cited above mandate that Deputy Forslund's investigative detention could last no longer than the time it took him to determine whether

Kothe was intoxicated, it has been suggested, in a traffic stop situation, it is not unreasonable for an officer to check for outstanding warrants. *See Davis,* 947 S.W.2d at 245 n. 6; *Smith v. State,* 840 S.W.2d 689, 692 (Tex.App.-Fort Worth 1992, pet. ref'd). The cases cited in *Valadez* also support the assertion that an officer may continue a detention pending the results of computer checks. *See United States v. Dortch,* 199 F.3d 193, 198 (5th. Cir.1999); *Shabazz,* 993 F.2d at 435. Moreover, the Court in *Shabazz* identified a law enforcement interest in running a computer check on the license of an individual stopped for a traffic violation. 993 F.2d at 437.

■ Although we agree that a warrant check in the context of a traffic stop is generally viewed as a reasonable law enforcement exercise, it may not be used as a means of extending a detention once the reasonable suspicion forming the basis for the stop has been dispelled. *Davis,* 947 S.W.2d at 245 (purpose of investigative detention effectuated when officers determined appellant not intoxicated). The record shows that Deputy Forslund initiated the warrant check *after* he determined Kothe was not intoxicated. At that point, the reason for detaining Kothe no longer existed, and the record contains no articulable facts demonstrating reasonable suspicion of criminal activity necessary for his continued detention. *Id.* (continued detention must be "based upon articulable facts which, taken together with rational inferences from those facts, would warrant a man of reasonable caution in the belief that continued detention was justified."). The teletype alert received by Deputy Forslund, which would have justified Kothe's continued detention, was nonetheless received ten to twelve minutes after the basis for Kothe's detention was resolved.

In granting the motion to suppress, the trial court concluded it was not reasonable for Deputy Forslund to continue to detain Kothe, even for the purpose of conducting additional computer checks, after it was determined Kothe was not intoxicated. The ten to twelve minute delay that occurred while the officer waited on results of a warrant check may not have imposed an undue hardship on Kothe, but whether or not the delay was burdensome is not the issue. The question is whether the continued detention was reasonable.

Under the abuse of discretion standard, we may not substitute our judgment for that of the trial court. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985) (not an abuse of discretion merely because appeals court would have decided the issue differently than the trial court). And, as noted, we must defer to the trial court's determination of the historical facts and rulings on mixed questions of law and fact. *Morfin v. State,* 34 S.W.3d 664, 666 (Tex.App.-San Antonio 2000, no pet.). Here, the determination of whether Kothe's continued detention was reasonable under the circumstances involved the trial court's evaluation of the historical facts as well as the credibility of the witnesses. These are findings we cannot disturb on appeal. And because we find no error in the application of the law to the facts as found by the trial court, we overrule the State's first issue.

### *Standing*

The State claims in its second issue that Kothe had no standing to challenge the search of his girlfriend, Brantley, who was detained along with him. Consequently, the State says the evidence seized from Brantley should not have been suppressed.

Although we agree Kothe has no standing to complain about any search and seizure conducted against Brantley, *see State*

*v. Allen*, 53 S.W.3d 731, 732 (Tex.App.-Houston [1st Dist.] 2001, no pet.), that issue is transcended by the illegal detention that was found to have occurred earlier. The trial court ruled that all the evidence seized, including the two baggies of heroin taken from Brantley, was tainted because it was obtained during the illegal detention. Accordingly, it makes no difference whether or not Kothe had standing. We overrule the State's second issue.

### Conclusion

We find no abuse of discretion by the trial court in its ruling to exclude evidence based on a finding of an illegal detention. The trial court's order is affirmed.