MEMORANDUM OPINION



No. 04-03-00676-CR



Olivia KLEIN,


Appellant



v.



The STATE of Texas,


Appellee



From the 81st Judicial District Court, Atascosa County, Texas


Trial Court No. 03-03-0093-CRA


Honorable Olin B. Strauss, Judge Presiding (1)



Opinion by: Karen Angelini, Justice


Sitting: Alma L. López, Chief Justice

 Paul W. Green, Justice

 Karen Angelini, Justice


Delivered and Filed: October 20, 2004


AFFIRMED

 Appellant Olivia Klein was indicted in Atascosa County, Texas, for possession of a controlled
substance, namely psilocin/psilocybin. Klein then filed a motion to suppress. After the trial court
denied the motion, Klein entered a plea of no contest. On July 8, 2003, the court deferred
adjudication of Klein's guilt and placed her on community supervision for a period of five years. Klein
appeals the trial court's denial of her motion to suppress. We affirm.

Background

 On August 20, 2002, Agent Broom, an officer with the Narcotics Task Force, was on duty
when a speeding car passed him. Agent Broom paced the car for about a mile to determine its speed.
He then stopped the car for speeding. The driver of the vehicle was William Bilbie. The appellant,
Olivia Klein, was the passenger. Agent Broom asked Bilbie to step out of the car and present his
driver's license and proof of insurance. Bilbie complied. Agent Broom then asked Bilbie why he had
been speeding. Bilbie replied that he had been talking to Klein and had not been paying much
attention to the road. Agent Broom noticed that Bilbie was acting very nervous; Bilbie kept looking
toward the front of the van and putting his hands in his pockets. According to Agent Broom, he had
to tell Bilbie three different times not to put his hands in his pockets. After telling Bilbie that "drugs
were frequent in that area," Agent Broom asked Bilbie if he had any narcotics on him or in his car.
Bilbie replied that he did not. Agent Broom then asked for Bilbie's consent to search the car and to
conduct a pat-down of Bilbie's person for weapons. According to Agent Broom, Bilbie agreed.
Bilbie, however, testified that Agent Broom never asked for his consent and he never gave consent.
According to Bilbie, Agent Broom just informed him that "he was going to search me." 

 Agent Broom, during the pat-down search, observed a bulge in the front pocket of Bilbie's
pants. The bulge "felt kind of soft like a plastic baggie." Agent Broom asked Bilbie to identify the
object. In response, Bilbie pulled a butane lighter out of his pocket. Still seeing a bulge in the pocket,
Agent Broom again asked Bilbie what it was. Bilbie then pulled out a small plastic bag filled with
mushrooms. Agent Broom asked Bilbie if there were more narcotics in the vehicle. Bilbie responded
that there were some drugs in Klein's purse. After requesting Klein to step out of the vehicle, Agent
Broom searched her purse without her consent. He found "some mushrooms in a baggie and a bunch
of loose mushrooms also inside her purse." After placing handcuffs on both Bilbie and Klein, Agent
Broom searched the car and "found some marijuana in a backpack." Agent Broom then arrested both
Bilbie and Klein for possession of a controlled substance. (2) 

Discussion

 In her first and only issue, Klein argues that the trial court erred in overruling her pre-trial
motion to suppress. A trial court's ruling on a motion to suppress is reviewed for abuse of discretion.
Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). Under this standard, "we give
'almost total deference to the trial court's determination of historical facts' and review the trial
court's application of search and seizure law de novo." Id. (quoting Guzman v. State, 955 S.W.2d
85, 88-89 (Tex. Crim. App. 1997)). Here, the trial court did not make explicit findings of historical
facts, so we review the evidence in the light most favorable to the trial court's ruling and assume that
the trial court made implicit findings of fact supported in the record. Id.; Carmouche v. State, 10
S.W.3d 323, 327-28 (Tex. Crim. App. 2000).

 According to Klein, the trial court should have granted her motion to suppress because Agent
Broom exceeded the scope of the traffic stop. Klein does not dispute the legality of the initial traffic
stop. However, she contends that Agent Broom exceeded the scope of the initial detention by
delaying issuance of the citation as a pretext for further questioning and investigation of possible
possession of narcotics. Klein complains that Bilbie's statement about drugs being contained in her
purse is the fruit of Agent Broom's unlawful detention, questioning, and pat-down of Bilbie.

 The Fourth Amendment provides protection for individuals from unreasonable search and
seizure. Traffic stops are considered seizures within the meaning of the Fourth Amendment. U.S. v.
Valadez, 267 F.3d 395, 397 (5th Cir. 2001); State v. Kothe, 123 S.W.3d 444, 447 (Tex. App.--San
Antonio 2003, pet. granted). Therefore, we analyze the legality of traffic stops for Fourth Amendment
purposes under the standard articulated in Terry v. Ohio, 392 U.S. 1 (1968). Valadez, 267 F.3d at
397-98; Kothe, 123 S.W.3d at 447. This standard is a two-tiered reasonable suspicion inquiry: 1)
whether the officer's action was justified at its inception, and 2) whether the search or seizure was
reasonably related in scope to the circumstances that justified the stop in the first place. Valadez, 267
F.3d at 398; Kothe, 123 S.W.3d at 447.

 Because Klein does not dispute the legality of the initial traffic stop, we turn to the second
prong of Terry, the scope of the stop. An investigative detention must be temporary and last no
longer than is necessary to effectuate the purpose of the stop. Florida v. Royer, 460 U.S. 491, 500
(1983); Kothe, 123 S.W.3d at 447. Once the reason for the stop has been satisfied, the stop may not
be used as a "fishing expedition for unrelated criminal activity." Ohio v. Robinette, 519 U.S. 33, 41
(1996) (Ginsberg, J., concurring); see also Kothe, 123 S.W.3d at 447 (quoting Robinette). In other
words, once an officer's suspicions have been dispelled, the detention must end unless there is
additional, articulable, reasonable suspicion. Valadez, 267 F.3d at 397; Kothe, 123 S.W.3d at 447.
Thus, in Kothe, we held that the police officer exceeded the scope of a traffic stop when there was
an estimated ten to twelve minute delay between the time the officer determined the defendant was
not intoxicated to the time when the officer questioned the defendant about a stolen bag of coins.
Kothe, 123 S.W.3d at 447-48.

 Here, however, the record does not indicate a significant delay. According to Agent Broom,
after he stopped Bilbie's vehicle, he asked Bilbie to step out of the vehicle and bring his driver's
license and insurance to the rear of his vehicle so that Agent Broom could explain why he had been
stopped. As Agent Broom was talking to Bilbie, Bilbie kept looking toward the front of the van and
putting his hands in his pockets, even though Agent Broom asked him three different times to keep
his hands out of his pockets. According to Agent Broom, Bilbie "was very nervous." Bilbie's nervous
behavior was a sufficient reason for Agent Broom to conduct a pat-down search for weapons. 

 Law enforcement personnel may conduct a limited search for weapons of a suspect's outer
clothing, even in the absence of probable cause, where an officer reasonably believes that the suspect
is armed and dangerous to the officer or others in the area. Balentine, 71 S.W.3d at 769. Such a
"weapons frisk" will be justified only where the officer can point to specific and articulable facts
which reasonably led him to conclude that the suspect might possess a weapon. Id. The officer need
not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent person
would justifiably believe that he or others were in danger. Id. Here, Bilbie's nervous behavior was
reason for Agent Broom to conduct a pat-down search for possible weapons. See id. at 769-70.
However, instead of conducting the search without consent, Agent Broom asked Bilbie for consent.
According to Agent Broom, Bilbie consented to the pat-down search. When Agent Broom conducted
a pat-down of Bilbie, he felt a bulge in Bilbie's pocket. According to Agent Broom, the bulge felt
"kind of soft like a plastic baggie type deal." 

 Under the plain feel doctrine, if a police officer lawfully pats down a suspect's outer clothing
and feels an object whose contour or mass makes its identity immediately apparent, there is no
invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons
under Terry. Minnesota v. Dickerson, 508 U.S. 366, 375-76 (1993). According to Klein, the plain
feel doctrine is not applicable here because "Agent Broom testified on cross-examination that he did
not recognize the item in Bilbie's pocket, but that he could certainly tell it was not a weapon." While
Agent Broom did testify that he did could not "tell what was in the pocket," he also testified on re-direct that on feeling the small plastic bag with soft material inside, he believed Bilbie to be carrying
contraband in his pocket. Agent Broom also testified that he is a member of the narcotics task force
and he has had drug recognition training. 

 In support of her argument, Klein relies on Minnesota v. Dickerson, where the Supreme Court
held that an officer's "plain feel" seizure of cocaine violated Terry because the officer manipulated
a lump in the defendant's pocket after he knew that the lump was not a weapon. 508 U.S. at 378-79.
Unlike the situation in Dickerson, here, Agent Broom did not try to manipulate the bulge in Bilbie's
pocket after he knew the object was not a weapon. Instead, he testified that upon feeling the bulge,
he believed based on the feel of the object that Bilbie possessed contraband. The trial court was free
to believe Agent Broom's testimony that based on his experience and training, he recognized the
small plastic bag to be contraband. 

 Klein also argues that the State failed to meet its burden of proof that Bilbie gave a voluntary
consent to search his person or vehicle. When a search is conducted pursuant to a valid consent to
search, the burden of proof is upon the State to show by clear and convincing evidence that the
consent was freely and voluntarily given. Reyes v. State, 741 S.W.2d 414, 430 (Tex. Crim. App.
1987). The consent must be positive and unequivocal, and police must not have employed duress or
coercion, actual or implied, in obtaining permission to search. Id. Whether consent to search was in
fact voluntary is a question of fact to be determined from the "totality of all the circumstances." Id.
However, under our standard of review, we review the evidence in the light most favorable to the trial
court's ruling and assume that the trial court made implicit findings of fact supported in the record.
Balentine, 71 S.W.3d at 768. We cannot substitute our judgment for that of the trial court, especially
when the findings are based on an evaluation of credibility and demeanor. Guzman, 955 S.W.2d at
88-89. 

 Here, Agent Broom testified that Bilbie consented to both a pat-down of his outer clothing
and a search of the vehicle. In contrast, Bilbie testified that he did not consent to either search. There
was no testimony from any witness of any duress or coercion used by the officer in obtaining Bilbie's
consent. Under our standard of review, looking at the evidence in the light most favorable to the trial
court's ruling, we hold that the trial court was free to believe Agent Broom's testimony that he did
in fact obtain consent from Bilbie to conduct a pat-down search and a search of the vehicle.
Moreover, Klein's arguments assume that her detention was illegal. (3) As stated above, Agent Broom
did not exceed the scope of the detention and would have had authority to conduct the pat-down
search of Bilbie without his consent. (4) 

 We overrule Klein's sole issue.

Conclusion


 Because the trial court did not abuse its discretion in denying Klein's motion to suppress, we
affirm the judgment of the trial court.


 Karen Angelini, Justice

Do not publish
1. The Honorable Olin B. Strauss signed the judgment. The Honorable Stella Saxon heard the motion to
suppress and signed the order denyng the motion to suppress.
2. The technical term for the illegal mushrooms at issue is "psilocin"or "psilocybin." Thus, Klein was indicted
for intentionally or knowingly possessing a controlled substance, "namely, psilocin and psilocybin, in an amount of
four grams or more but less than 400 grams."
3. Klein concedes this point when she states that she "acknowledges the deferential standard of review from
which this Court must operate, as noted above. However, the trial court in this case did not find an unlawful detention,
and therefore, it most likely did not consider whether consent was an independent act of free will . . ." The record on
appeal does not contain findings from the trial court, only an order denying the motion to suppress. However, assuming
the trial court did not find an illegal detention, we likewise have not found one.
4. Klein does not raise any issue in her brief with regard to the legality of the actions taken in searching her
purse; therefore, we have only addressed the legality of the actions taken with regard to Bilbie.