# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10226

United States Court of Appeals
Fifth Circuit

**FILED**

July 19, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

JOHNNY DAVID JOHNSON,

      Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:14-CR-135-1

Before DAVIS, JONES, and GRAVES, Circuit Judges.

PER CURIAM: *

    Defendant appeals the district court's denial of his motion to suppress evidence obtained in a traffic stop based on a violation of the defendant's Fourth Amendment rights. According to the defendant, the police discovered drugs in the vehicle that he was riding in only after unconstitutionally extending the traffic stop to conduct a dog sniff. We AFFIRM the district court's judgment: the police officers stopped defendant's vehicle based on a reasonable

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10226

suspicion of both traffic violations and drug trafficking, and the dog sniff was reasonably necessary to investigate the suspected drug activity.

I.

A narcotics investigator for the Tarrant County, Texas Sheriff's Office received information that Johnny David Johnson sold methamphetamine from his home. The investigator enlisted a confidential informant to help gather evidence against Johnson.

In early February 2014, the informant met Johnson at his home and asked to purchase methamphetamine. Johnson kept a substantial amount of a crystal-like substance in a plastic bag, and after removing a portion, he handed it to the informant. Police later tested this substance and confirmed that it was methamphetamine. Roughly two weeks later, the informant made a second controlled buy from Johnson. Again, the informant visited Johnson at his home, and Johnson sold him a substance later confirmed as methamphetamine by police. Following the controlled buys of methamphetamine, the narcotics investigator obtained a search warrant for Johnson's home.

On February 13, 2014, the Sheriff's Office proceeded to execute the warrant to search Johnson's home. The team tasked with conducting the search included Eric Curtis, a narcotics investigator, and Jeff Tindle, a canine officer. Curtis had Johnson's home under surveillance that morning as pre-search preparation.

Curtis saw Johnson walk out of his home and onto the driveway where several vehicles were parked. Johnson initially went to a white Jeep, but Curtis did not see Johnson remove anything from the vehicle nor did he observe any object in his hands. Johnson then entered the passenger's side door of a pickup truck parked nearby.

No. 15-10226

The driver of the truck drove away with Johnson as a passenger; Curtis followed them in his unmarked vehicle. Curtis radioed Tindle to tell him that Johnson had left the home in a pickup truck and that he saw the vehicle commit two traffic violations. He asked Tindle to stop the truck in his marked police unit.

Tindle stopped the pickup truck and asked its occupants to exit. Johnson, along with the truck's other occupants, complied.[1] However, at some point, the vehicle's driver became agitated and Tindle had to restrain him with handcuffs. After the occupants exited the vehicle, Tindle ran a computer search for outstanding warrants. While none existed, the search revealed that each had prior felony convictions and that two of the occupants were on probation.

Curtis arrived at the scene around the time Tindle completed the background check. He asked permission to search the pickup truck which the driver denied. Curtis then instructed Tindle to use his canine to perform a sniff test. While sniffing the pickup truck, the dog alerted to the presence of drugs. Curtis and Tindle searched the truck and found both methamphetamine and a pistol.

The government indicted Johnson for possession with intent to distribute fifty grams or more of methamphetamine. Before trial, Johnson moved to suppress the drugs seized during the traffic stop arguing that the dog sniff unconstitutionally extended the stop and his detention. The district court denied his motion; it found that Johnson lacked Fourth Amendment standing to challenge the evidence, or alternatively, reasonable suspicion supported the

---

[1] Other occupants of the pickup truck included its driver, John Berg, and Cora Kidd, the rear passenger.

No. 15-10226

sniff test. Ultimately, a jury found Johnson guilty. He now challenges the district court's denial of his motion to suppress evidence from the traffic stop.

The denial of a motion to suppress creates a mixed question of fact and law.[2] We review factual findings for clear error and conclusions of law de novo.[3]

## II.

Johnson argues that the district court erred in denying his motion to suppress evidence, because the evidence was discovered when police unconstitutionally extended the stop to perform a dog sniff. We analyze this argument in two steps: we consider whether the initial stop was justified by reasonable suspicion; if so, we then determine whether the officer's subsequent actions during the stop reasonably related to the mission of the stop.[4]

The stop was made because of both the traffic violations and a reasonable suspicion of drug activity based on the information previously received from a confidential informant in connection with two controlled buys. This information was enough for a judicial officer to find probable cause to issue a search warrant for Johnson's home, and it is obviously enough to satisfy the much lower standard of reasonable suspicion for a traffic stop.

Curtis and Tindle's mission on the day of the stop was to investigate Johnson's drug activity and to execute the search warrant authorizing that investigation. We have no difficulty saying that furthering their investigation into Johnson's drug activity was one reason for the stop. Moreover, this court has recognized that reliance by an officer on information of drug activity

---

[2] *United States v. Riazco*, 91 F.3d 752, 754 (5th Cir. 1996).

[3] *Id.*

[4] *United States v. Davis*, 620 F. App'x 295, 298 (5th Cir. 2015).

No. 15-10226

developed before a traffic stop can be used as an additional justification for the traffic stop.[5] Therefore, because Tindle made the initial stop on suspicion of both a traffic violation and drug activity, the dog sniff was reasonably related to a cause of the stop.[6]

### III.

For these reasons, we AFFIRM the district court's judgment.

---

[5] *See, e.g.*, *United States v. Henton*, 600 F. App'x 263, 264 (5th Cir. 2015) ("Given the totality of the circumstances, including the information developed before and after the stop, the officer had reasonable suspicion to prolong the traffic stop.").

[6] *See id.* ("Henton was pulled over for a traffic violation but also because the officers had reasonable suspicion of drug activity[,]" and thus "the officer had reasonable suspicion to prolong the traffic stop and conduct the dog sniff.").

JAMES E. GRAVES, JR., Circuit Judge, dissenting.

The majority opinion concludes that, "because Tindle made the initial stop on suspicion of both a traffic violation and drug activity, the dog sniff was reasonably related to a cause of the stop." I disagree, and therefore respectfully dissent.

## I.

"We analyze the legality of traffic stops for Fourth Amendment purposes under the standard articulated by the Supreme Court in *Terry v. Ohio*." *United States v. Pack*, 612 F.3d 341, 349-50 (5th Cir. 2010). This analysis involves a two-part inquiry where we first determine if the stop of the vehicle was warranted and then decide whether the officer's actions following the stop were "reasonably related in scope to the circumstances that caused him to stop the vehicle in the first place." *Id* at 350. During the stop, if the officer acquires reasonable suspicion that criminal activity is afoot, that officer may prolong the stop to dispel such suspicion. *Id.*

Johnson does not challenge the legality of the initial stop. Rather, Johnson contends that the officers did not have reasonable suspicion to extend the traffic stop beyond the time necessary to perform computer checks of the driver's and passengers' backgrounds. *See Rodriguez v. United States,* 135 S. Ct. 1609, 1615-16 (2015). The majority apparently concluded that there was reasonable suspicion to prolong the stop because of facts that formed the basis of a search warrant for evidence of drug activity at Johnson's home. I disagree.

When evaluating whether there was reasonable suspicion to extend a vehicle stop we consider the "totality of the circumstances" to determine whether there was "a particularized and objective basis" for the officer's suspicion. *United States v. Arvizu,* 534 U.S. 266, 273 (2002). While a causal nexus between the officer's suspicion and the initial reason for the stop is not

required, we do "inquire whether the officer's . . . actions were reasonably related in scope to the circumstances that justified the stop." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc).

In this case, the officer testified that the basis of the stop was two traffic violations observed by a different officer. During that time, the officer performed a computer check and uncovered no warrants or issues meriting prolonging the stop. At that point, the stop should have concluded and the occupants of the car should have been free to leave. The majority opinion nevertheless concludes that there was reasonable suspicion to prolong the stop because the officer who requested the traffic stop was aware of facts contained in an affidavit seeking a search warrant authorizing a search of Johnson's home. But, the sole basis for the stop was minor traffic violations. No reasonable suspicion of criminal activity was developed during the stop.[1] Therefore, I would conclude that the officers exceeded their authority by ordering a dog sniff following a traffic stop without suspicion, acquired during the stop, that the driver or passengers were engaged in criminal activity.

I respectfully dissent.

---

[1] The government contends that there was reasonable suspicion to prolong the stop because the driver of the car was agitated and had to be handcuffed. But, the officer who pulled over the vehicle testified at the suppression hearing that he did not remember who handcuffed the driver, and did not remember whether the driver was arrested before or after the search of the vehicle.